HALL v. CAYUGA LAKE CEMENT CO.

(Supreme Court, Appellate Division, Third Department. March 7, 1906.)

TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where, in an action for the death of a servant by the explosion of dynamite, the only evidence that the confinement of gases in dynamite would cause an explosion was that of a witness who testified that, to explode dynamite by heating, it is confined in a metallic receptacle, where the gases cannot escape from it, but it appeared that the dynamite in question was not so confined, it was error for the court to permit the jury to say that the explosion might have been caused by such confining of gases, and to charge defendant with negligence therefor.

Appeal from Trial Term, Tompkins County.

Action by Lida A. Hall, as administratrix of the estate of Burt J. Hall, deceased, against the Cayuga Lake Cement Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

The defendant in the transaction of its business is required to blast rock. This rock is blasted by the use of dynamite. This dynamite is stored in a safe reservoir out of harm's way. As it is used, however, it is required to be brought up, and in cold weather thawed out before it can be exploded. A little shanty was built upon the defendant's premises, near to the quarry,

about 12 feet square. This shanty contained two rooms. One of them was what was called the "tool room," in which the tools were kept. The other room was called the "dynamite room." The dynamite room was the smaller of the two. In this dynamite room was a stove, and around the stove upon two sides were shelves about 18 inches from the floor, upon which the dynamite was placed for the purpose of thawing it out. After the dynamite was thawed out, a little hole was dug out from one end of a stick of dynamite, into which was put an exploder. The apparatus containing this exploder, and containing either the fuse by which it was lighted or the wire by which it was afterwards attached to the electric battery, was called the "cap." The exploder was put into the end of the stick of dynamite, and in some way the wires were then wound around the end of the stick of dynamite, so as to hold the exploder or cap in its place. Upon the 18th day of January, 1903, the plaintiff's intestate was last seen going toward this house where this dynamite was kept. A short time afterward a loud explosion occurred, and the plaintiff's intestate was found, with his body very much mutilated, about 30 or 40 feet from this house. This action is brought by his administrator for damages for his death, as caused by the negligence of the defendant. The jury rendered a verdict of $3,500. From the judgment entered upon that verdict, and from an order denying defendant's motion for a new trial, the defendant here appeals. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHESTER, KEL-LOGG, and COCHRANE, JJ.

Halliday & Denton, for appellant.
J. J. McGuire, for respondent.

SMITH, J. That all dynamite in cold weather is required to be thawed out before it can be used is admitted. That the method which the defendant adopted for thawing out the dynamite (of placing it beside a hot stove) is the method commonly in use is established by the evidence. The learned trial court, in charging the jury upon the question of negligence, said:

"The first proposition is, she must prove that the accident was caused by the negligent conduct of the defendant corporation. That is the first question which you must examine in this case. It is asserted on the part of the plaintiff that the accident occurred through the want of care by the person who was in charge of and was superintending the preparation of the dynamite in these sticks; and the plaintiff asks you to infer from the evidence in this case that in some manner not known to the plaintiff, in the preparation of or in the storing of these sticks of dynamite which had been thawed near the stove, and in the absence of the superintendent, that in some manner fire or heat or something was applied to some of these sticks of dynamite, and that the explosion took place, and that this occurred from a want of care and caution, and negligence on the part of this man Callihan. The evidence shows that he was the only person that had the charge of this shanty and of the preparation of loading these sticks of dynamite, or placing the caps in them. The plaintiff's claim is that some of these sticks were improperly capped and left upon the shelf near the stove, and the theory which has been suggested on the part of the plaintiff is that in some manner after the cap had been inserted into the dynamite, and it had been secured there, that the confining of certain gases caused the explosion. One witness said that if certain gases had been permitted to escape from the sticks it would have rendered the whole composition harmless under ordinary circumstances, but in some way, by confining the gas in the tube, closed in the manner in which they were, that the explosion took place."

At the close of the charge the defendant's counsel requested the court to charge:

"That the plaintiff cannot recover in this case if the explosion was caused in any way by gases accumulating in these sticks of dynamite. The Court: No; the evidence of one witness is that that would cause the explosion. Defendant's Counsel: There is no proof in this case that that did cause it. The Court: There is what he said about it. (Defendant's counsel excepted to the refusal to charge as requested.) The Court: That I leave as question of fact to the jury to determine how the explosion took place. Defendant's counsel excepted to the charge as made and to the refusal to charge as requested."

From this charge it will be seen that the jury were authorized to find out what was the cause of the explosion, which cause the plaintiff had been unable to discover and prove before the jury. Aside from this, however, we are unable to find any evidence whatever which would authorize the jury to find that this explosion was caused by the confinement of gases which would come from the dynamite. The only evidence to the effect that the confinement of gases in dynamite will cause an explosion is found in the evidence of the witness Maloney. Upon that subject he swears, "To explode it by heating, it is confined in a metallic receptacle, where the gases cannot escape from it." This dynamite was not confined in any metallic receptacle. This "capping," so called, is fully described in the evidence by the witness Calkins, and all there is of it is the insertion of an exploder into a hole about as large as a lead pencil in the end of a stick of dynamite, and fastening it there by wires wound around the end of the stick. It is apparent that the gases which would escape by reason of the heating of the dynamite are no more confined than they would be without the capping. There being no other evidence in the case as to the possibility of the explosion being caused by the confinement of gases, it was clearly error for the learned court to allow the jury to say that the explosion might have been so caused, and to charge the defendant with negligence therefor. It is not necessary for us to decide, therefore, whether there was sufficient evidence in any aspect of the case to authorize a recovery, or whether the rulings upon questions of expert testimony were erroneous. These questions may not be presented in another trial.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.